ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.*

BLOCK.

Opinion delivered May 28, 1906.

1.  PLEADING—AMENDMENT.—Where a suit to recover damages for the negligent killing of a railway employee was brought for the benefit of the widow as next of kin, it was not error, on discovering that the alleged widow was not lawfully married to deceased, to substitute in the complaint the name of his mother as his next of kin. (Page 181.)

2.  SAME—AMENDMENT CHANGING ISSUE—CONTINUANCE.—Where, on permitting an amendment to the complaint which changed the issue, the court adjourned the case for five days to enable the defendant

to meet the new issue, at which time defendant went to trial without asking for more time, a motion for new trial on the ground that the time allowed was too short, without showing why further time was necessary, was insufficient. (Page 182.)

3.  DAMAGES—EXCESSIVENESS.—A verdict awarding to deceased's mother, as next of kin, the sum of $572 was not excessive where deceased is shown to have contributed as much as $5 per month to her support, and her expectancy of life is 17.40 years.  (Page 184.)

4.  SAME—PAIN AND SUFFERING.—A verdict awarding to deceased's estate for his pain and suffering the sum of $360 is not excessive where he is shown to have received a severe blow in the stomach from which he died three hours later.  (Page 184.)

Appeal from Cross Circuit Court; *Allen Hughes,* Judge; affirmed.

### STATEMENT BY THE COURT.

The complaint alleged that "Elijah Horner was on June 24, 1904, employed to work on defendant's plow car; that said plow and machinery thereon was operated by the use of air; that said machinery was in a defective condition, as the defendant well knew, or could have known by the exercise of reasonable diligence; that the said defendant negligently and carelessly permitted said machinery to be in the defective condition, and to be handled by unskilled and untutored workmen, who were in the employ of the defendant in another and different capacity; that said defendant, by such use of defendant's machinery by unskilled employees, negligently and carelessly caused an iron beam of large proportions to strike and injure plaintiff's decedent, so that, after great suffering for ten hours, he died; that said Elijah Horner left surviving him his late widow, Cleopatra Horner, as his next of kin, for whose benefit judgment is prayed for $10,000." There was a second count in the complaint, which contains the same allegations of fact, and in which judgment is prayed in the sum of $5,000 for the estate.

The defendant in its answer, denied all the allegations of the complaint, and also pleaded contributory negligence on the part of the deceased.

Such facts as are deemed necessary are stated in the opinion.

*B. S. Johnson,* for appellant.

When it was discovered on the trial that Cleopatra was not

the legitimate wife of deceased, and it was proposed to amend the complaint by substituting as plaintiff Ulcie Pinckney as mother and next of kin, the court should not have permitted such amendment, except upon terms. 23 Ark. 543; 67 Ark. 142; 66 Ark. 615; Newman, Pl. & Pr., 704, 705; 22 Barb. 116. As to definition of "surprise," see Cal. Code, § 653; 62 Cal. 443; 77 Mo. 26. The party alleging surprise is entitled to a new trial if he shows that some act prejudicial to him has been done which, with proper inquiry, he could not have anticipated, and against which with due diligence he could not have protected himself. 6 How. 336; 5 Abbott, 203; 52 How. 193; 34 Barb. 291. Since defendant entered its plea of surprise before the amendment was allowed, there was no laches on its part. 39 Cal. 555; 6 Abb. N. C. 378.

*Smith & Smith* and *Lamb & Caraway,* for appellee.

The amendment was properly allowed. It was allowed on November 4, and then the court adjourned until the ninth. Appellant had the intervening time in which to investigate and prepare to meet the new issue. On the latter date, if it had not had sufficient time, appellant should have asked a further postponement. 55 Ark. 567; 67 Ark. 144; 57 Ark. 60; 66 Ark. 615.

WOOD, J., (after stating the facts.)  1.  After the evidence was concluded, the court instructed the jury without objection that appellee could not recover for alleged defective machinery. This left for the determination of the jury only the questions of fact as to whether or not the death of Horner resulted from the negligence of appellant in the operation of the machinery, and as to whether or not there was contributory negligence on the part of Horner.

It was wholly immaterial, under the allegations of the complaint, whether the company was negligent in employing unskilled workmen, unless the negligence of such workmen produced the death of Horner; and if the workmen were skilled, it would not exempt the company from liability under the complaint if such workmen negligently produced the death of Horner. So the only questions, as we have said, are, was the company negligent? and, if so, was Horner guilty of negligence that contributed to his death? Without undertaking to discuss the facts in detail, it is sufficient to say that upon these questions of fact the evi-

dence was conflicting. The jury was properly instructed, and there was evidence to support the verdict.

2. The complaint alleged: "That Elijah Horner left surviving him his widow, Cleopatra Horner, his next of kin." The answer contains this averment: "Defendant, not having sufficient knowledge upon which to found a belief, denies that deceased left surviving him a widow, Cleopatra Horner, as his next of kin." During the progress of the trial, and after two or three witnesses had been examined, Cleopatra Horner testified to facts which justified the conclusion that she had not been the legal wife of Horner. Thereupon appellee asked permission to amend the complaint by inserting the name of the mother of Horner as the next of kin. This leave was granted over appellant's objection. This occurred on November the 4th. The court adjourned on November the 4th till November the 9th. The court suggested that by November the 9th appellant could "probably be ready to meet the new issue." Although leave was granted to thus amend the complaint on November the 4th, the amendment was not in fact made by inserting the words "Ulcie Pinckney, his mother as next of kin" until November the 9th. When these words were inserted, the appellant objected, but it did not ask for further time at the time this amendment was made.

In the motion for new trial it is stated that "the defendant, its officers and attorneys, had never heard of Horner having any mother living or any kin living other than his purported widow until Friday, November 4, after the trial had begun, when plaintiff asked leave to amend his complaint, which was taken under consideration and advisement by the court until Wednesday November 9, 1904, to which time further proceedings in this cause and the session of the court were adjourned, and during this intermission the defendant and its agents and attorneys had not sufficient time to investigate and meet this proposed amendment, and they did not know that the witness Ulcie Pinckney would testify that the deceased had made contributions to her support during his lifetime until she was actually on the witness stand," etc. When Ulcie Pinckney was introduced as a witness, the defendant objected to her examination on the ground that it was new matter, and that the complaint had just been amended, and defendant had not had time or opportunity to meet it, which

objection was overruled by the court, and exceptions duly saved.

In support of the ground of surprise, in the motion for new trial, an affidavit of the attorney is filed, which is as follows:

"S. D. Campbell, being sworn, says that he represented the defendant as its attorney in preparing for the trial of this cause; that he never had any information to the effect, or which would warrant him in believing, that any contributions to Ulcie Pinckney, the mother of deceased, Elijah Horner, were ever made by him until she was put upon the witness stand in this cause; that he had no reason to suppose that the testimony as to such contributions would be introduced on the trial of this cause. On the contrary, all information led him to believe, and he did in fact believe, there would be no such testimony as to such contributions; that the testimony of said Ulcie Pinckney upon this point of contributions from deceased Horner to her was an entire surprise to affiant, and that he knows no way he could have anticipated it, or that he could have met it; that he believes the facts set forth in the last ground of motion for a new trial numbered 30 are true."

The purpose of the amendment requested by appellee was apparent when the request was made. Appellant was by the amendment proposed necessarily advised that it would be a pertinent inquiry as to whether Horner had contributed to his mother's support; and if appellant did not make inquiry and prepare to meet this phase of the case during the interim from November 4 till November 9, it was its own fault. If it endeavored to meet this new matter, and the time was too short, it should have asked the court for further time on the reconvening of the court and the resumption of the trial on the ninth, and it should have shown then to the court the reasons why the time was too short, and why further time was necessary. It should have stated facts from which the court might have determined as to whether or not further time was necessary. Except by general statement by way of conclusion, it does not appear that the time intervening between the 4th and the 9th of November was insufficient to enable appellant to make all the necessary preparation to meet the proposed amendment. No facts are alleged to show that any diligence whatever was exercised to "get ready."

The facts in the cases of St. Louis, I. M. & S. Ry. Co. v.

*Power,* 67 Ark. 142, and *Mut. Life Ins. Co.* v. *Parrish,* 66 Ark. 615, were entirely different from the facts in this case, and those cases do not support appellant's contention here. The amendment was proper, and the court did not abuse its discretion in permitting it in the manner shown.

3. The verdict was not excessive. The amount returned for the next of kin was $572. Horner's mother, Ulcie Pinckney, is shown to have had an expectancy of life of 17.40 years. Horner is shown to have contributed as much as $5.00 per month to her support during two and a half years prior to his death. He had occasionally sent her as much as ten per month. The verdict for pain and suffering for the benefit of the estate was $360. Horner was struck in the lower part of the stomach with a heavy iron beam. He lived three hours, but died from the effects of the blow. In the very nature of the case we know that he must have suffered untold agonies, but the proof shows that he suffered. The verdict was moderate.

4. Appellant contends that the court erred in permitting witness, Cleopatra Horner, over defendant's objection, to answer question, "Tell the jury how you and Horner lived as compared with other colored people in the community; that is, whether you lived well, and he provided for his family liberally, or whether he was stingy in providing for his family," and in giving answer, "Yes, sir; he gave me everything I wanted. He was just as good to me as he could be," and in testifying as to the subject-matter of such question. This testimony was adduced before it was ascertained that Cleopatra Horner was not the wife of Elijah Horner. Appellant did not ask to have it excluded after this discovery was made and its incompetency was disclosed. But no possible prejudice could have resulted to appellant on account of this testimony. Indeed, its tendency was rather to the prejudice of appellee, since it showed that Horner was contributing liberally of his means, thus revealing a diminished ability to contribute all of his surplus earnings to his mother, and, moreover, a disposition not to do so.

Affirm.